UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY QUINTANIA,<br><br>　　　　　　Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>　　　　　　Defendant. | Civil No.06cv2059-L (NLS)<br><br>**REPORT AND RECOMMENDATION<br>RE: CROSS MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>[Doc. Nos. 12 & 16] |

Plaintiff Danny Quintania brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g),[1] to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income payments ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*.  Plaintiff has filed a motion for summary judgment [Doc. No. 12] and memorandum in support [Doc. No. 13], arguing that he should have been found "disabled" under the Act, and that the Appeals Council's decision adopting Administrative Law Judge ("ALJ") James S. Carletti's decision of May 23, 2006 denying him benefits should be reversed because it is not supported by substantial evidence and is based on legal error.  The Commissioner has filed a cross-motion for summary judgment and opposition to Plaintiff's motion [Doc. Nos. 16 & 17].

---

[1] 42 U.S.C. § 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States....  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive.

After careful consideration of the papers, the administrative record, and the applicable law, this Court **RECOMMENDS** that the Commissioner's decision adopting the ALJ's decision be **AFFIRMED**, Plaintiff's motion for summary judgment [Doc. No. 12] be **DENIED**, and the Commissioner's cross-motion for summary judgment [Doc. No. 16] be **GRANTED**.

## PROCEDURAL HISTORY

Plaintiff applied for SSI benefits on September 17, 2004. [Administrative Record ("AR") at 63-67.] Plaintiff alleged onset of disability as of April 1, 2004. [AR at 283.] He claimed to have suffered a heart and blood infection, and to experience weakness and limited breathing ability, manifested as shortness of breath capable of producing dizziness. [AR at 69; 78.] He also claimed to suffer from fatigue and nausea, and claimed that his condition caused him to have to sleep throughout the day and made it difficult for him to walk for any length of time. [AR at 78; 90.] On April 8, 2005, the Social Security Administration ("Administration") determined Plaintiff was not disabled and denied him benefits. [AR at 24-28.] Plaintiff requested reconsideration of his application, and the Administration denied benefits again after reconsideration. [AR at 29-35.] On June 19, 2005, Plaintiff requested an administrative hearing before an ALJ to consider his application a third time. [AR at 36.]

On February 8, 2006, the ALJ conducted a hearing to consider the merits of Plaintiff's application. [AR at 281-303.] This hearing resulted in his application being denied by the ALJ in a written decision dated May 23, 2006. [AR at 7-19.] Plaintiff disagreed with the ALJ's decision, and on May 30, 2006, he requested an Appeals Council Review of the decision. [AR at 6.] On July 28, 2006, the Appeals Council concluded there was no basis for granting Plaintiff's request for review and affirmed the ALJ's decision, which became the final decision of the Commissioner. [AR at 3.]

On September 22, 2006, after having exhausted all administrative remedies, Plaintiff initiated this action challenging the proceedings in connection with the Commissioner adopting the ALJ's decision. (*See Plaintiff's Complaint*, Doc. No. 1.) On September 29, 2006, District Judge M. James Lorenz referred all matters in this action to the undersigned Magistrate Judge for report and recommendation. (*See September 29, 2006 Order*, Doc. No. 4.) On January 17, 2007, the Commissioner filed an Answer [Doc. No. 9] to Plaintiff's complaint. On March 2, 2007, Plaintiff filed his motion for summary judgment [Doc. No. 12], requesting that the Court reverse the ALJ's decision

and remand for payment of benefits.  On April 27, 2007, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion [Doc. Nos. 16 & 17], requesting that the ALJ's decision be affirmed.

### FACTUAL BACKGROUND

#### *1.     PLAINTIFF'S TESTIMONY*

Plaintiff was born on August 23, 1957 and was 48 years old on the date of the ALJ hearing.  [AR at 58; 284.]  At the hearing, having been duly sworn by the ALJ, Plaintiff testified that he had not worked since 1990.  [AR at 284.]  His mother has supported him since that time, and he resides with her.  [*Id*.]  He stopped working after a disc removal from his lower back subsequent to injury started to cause back problems and pain on his whole left side.  [AR at 286.]  Plaintiff testified that absent his back problems and back pain, he believed he would be able to work.  [*Id*.]  He indicated that he no longer suffers from a heart and blood infection, which were both listed on his SSI benefits application as reasons he could not work.  [*Id*.; AR at 69; 78.]  Plaintiff testified that he has Hepatitis C, which causes him to be always tired and to wear out easily.  [AR at 287.]  He stated that as a result, he can only walk about one block at a time.  [*Id*.]

Plaintiff testified further that he has problems sitting for periods of time because his buttocks cramp and he experiences numbness in his left leg that travels down to his left foot.  [*Id*.]  He also has trouble standing for longer than ten minutes at a time, and can lift about fifteen pounds.  [AR at 288.]  Plaintiff testified that he experiences back spasms that cause him to lose control of the left side of his body for five to ten minutes at a time, occurring mostly in the mornings.  [AR at 288-89.]  Plaintiff stated that although he no longer has a heart or blood infection, that he still experiences negative physical side effects as a result of those infections, such as chest pain, pain while breathing, difficulty breathing deeply, and shortness of breath.  [AR at 290.]  Plaintiff testified that he has to rest most of the day, taking several naps each day and taking at least three times a day to rest for fifteen minutes at a time.  [AR at 291-92.]

Plaintiff testified that he is able to do some household chores, such as vacuuming and dusting, but is unable to go to the grocery store, do laundry, or cook.  [AR at 292.]  Plaintiff stated that he has no friends, and does not take part in any social activities or hobbies.  [AR at 292-93.]  Plaintiff testified that

he was receiving no medical treatment at the time of the hearing other than from the Vista Community Clinic. [AR at 285.] Plaintiff stated that the only medication he takes is Motrin, an over-the-counter pain medication, which affords him no relief from his back pain. [AR at 286.] Plaintiff testified that he had used methamphetamine in the past, but stopped when he was hospitalized with the heart and blood infection, approximately a year and a half prior to the date of the hearing. [AR at 293.]

### 2.   *MEDICAL & VOCATIONAL EVIDENCE PRESENTED*

#### A.   *Medical Expert: Dr. Betty Grant-Anderson*

Dr. Anderson testified as a medical expert at the administrative hearing. [AR at 294-97.] Having examined Plaintiff's medical records, she reported that Plaintiff suffered from a bacterial infection of the heart valve previously, but appeared to be recovered from that condition with minimal residual problems. [AR at 294.] Dr. Anderson testified that Plaintiff's two primary conditions are chronic back pain and a heart murmur, which do not meet or equal any listed impairment. [AR at 295.] She concluded that the back pain might impose functional limitations on Plaintiff, such as interfering with lifting and carrying when he is experiencing back pain and spasms. [*Id*.] Specifically, Dr. Anderson described Plaintiff's physical limitations as "he would only be able to lift occasional 20, frequently 10 [pounds], walk or stand at the [sic] 15 minutes at a time, cumulatively at the two hours a day. Sitting up to an hour at a time, cumulatively up to six hours a day." [*Id*.] In her opinion, Plaintiff requires a sit/stand option during his day, which potentially would necessitate unscheduled work breaks, and he needs to avoid extreme heat and cold as well as ladders, scaffolding, and heights. [AR at 295-96.] Dr. Anderson opined that Plaintiff was capable of occasional crawling, stooping, and bending. [*Id*.]

#### B.   *Vocational Expert: Connie Guillory*

Connie Guillory testified as a vocational expert at the administrative hearing. [AR at 297-302.] Having reviewed the record evidence, she reported that Plaintiff has no past relevant work activity. [AR at 298.] The ALJ presented a hypothetical encompassing various aspects of Plaintiff's physical and mental limitations. [*Id*.] The hypothetical assumed the following facts and limitations: a young individual as defined in the Social Security regulations with a high school education, no past relevant work activity, with the physical health limitations set out by Dr. Anderson. [*Id*.] Ms. Guillory found

that given those limitations and facts, Plaintiff would be capable of performing unskilled, sedentary, light work. [*Id*.] Examples of available positions include production helper, assembler, and order clerk. [AR at 299.] Upon examination by Plaintiff's attorney, Ms. Guillory testified that some employers would consider it a significant erosion of the work day if Plaintiff were required to take unscheduled work breaks lasting ten minutes or longer due to erratic back spasms. [AR at 300.]

### C. *Additional Medical Evidence*

The relevant medical evidence shows that Plaintiff was admitted to Tri-City Medical Center in Oceanside, California, on August 14, 2004. [AR at 111.] Plaintiff was 46 years old at the time and found upon admission to have a history of intravenous drug abuse. [*Id*.] Plaintiff presented with chills, fever, an altered mental state, and a history of having blood in his stools. Subsequent to an upper endoscopy and blood cultures, Plaintiff was admitted to the Intensive Care Unit and treated for a bacterial blood infection, soft tissue infection due to IV drug abuse, gastrointestinal bleeding, Hepatitis C, and endocarditis (an inflammation of the inner layer of the heart, the endocardium). [AR at 111; 115.] Plaintiff was discharged on August 30, 2004, and readmitted on September 2, 2004 after presenting at the Emergency Room with abdominal pain, nausea, and hematemesis (vomiting blood). [AR at 102.] He was released several days later after being diagnosed with gastrointestinal bleeding. [AR at 110.] Subsequent to his discharge, Plaintiff received home nursing care for a period of weeks until the end of October 2004. [AR at 132.] During that time, he was given IV fluids and antibiotics via a "picc line" (a peripherally inserted central catheter - a form of intravenous access that can be used for a prolonged period of time to administer antibiotics). [AR at 133.] Upon discharge from home care, Plaintiff was instructed to increase his activity gradually and to eat a regular diet. [AR at 134.] Plaintiff was also referred for consultation with a cardiologist. [*Id*.]

On December 21, 2004, Dr. Alberto Chavira, a cardiologist, examined Plaintiff. [AR at 237.] After reviewing Plaintiff's relevant medical history, and based upon Plaintiff's own statements regarding his recurrent chest pain, Dr. Chavira diagnosed Plaintiff with post-endocarditis non-anginal chest pain (chest pain that is not due to heart disease or to an insufficient supply of oxygenated blood to the heart, and that does not result from exertion). [AR at 237-38.] After some follow-up tests and visits, Dr. Chavira concluded that Plaintiff had no heart damage as a result of his bout with endocarditis, and

his chest pain was not due to heart disease. [AR at 234.] As such, Dr. Chavira discharged Plaintiff from his care. [*Id*.]

In March 2005, Dr. Denny Lee, an internist, examined Plaintiff at the request of the Department of Social Services. [AR at 247-52.] After reviewing Plaintiff's relevant medical history, Dr. Lee found that Plaintiff has no signs of congestive heart failure; has recovered from the endocarditis with no residual effects; has a history of Hepatitis C but no accompanying chronic liver disease; has tenderness in his back, back spasms, and a limited range of motion as a result; and maintains a normal gait and posture. [AR at 250-51.] Dr. Lee opined that Plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently, could stand and walk for up to six hours and sit for six hours out of an eight hour workday with regular breaks. [AR at 251.]

### 3.    *ALJ'S FINDINGS*

After a discussion of the evidence in the record, the ALJ determined that Plaintiff was not entitled to SSI benefits. [AR at 10-19.] In concluding that Plaintiff is not disabled within the meaning of the Social Security Act, the ALJ relied on several key pieces of evidence in the medical record. First, the ALJ noted that Plaintiff's endocarditis was fully cured by prolonged treatment with antibiotics, resulting in an accordant diagnosis by Dr. Chavira six months later in February 2005. Therefore, the endocarditis would not have met the impairment duration requirement of at least twelve months pursuant to 20 C.F.R. § 416.909. [AR at 15-16.] Second, Dr. Chavira found that Plaintiff's follow-up echocardiogram revealed no permanent damage to Plaintiff's heart as a result of the endocarditis. [AR at 16.] Third, the ALJ noted that Dr. Lee found Plaintiff to have no signs of heart failure or any history of cardiac symptoms. [*Id*.] Fourth, Dr. Lee concluded that Plaintiff's Hepatitis C had not resulted in stigmata or acute or chronic liver disease. [*Id*.] Fifth, the ALJ noted that Plaintiff had no history of taking prescription pain medication, i.e. strong codeine or morphine based analgesics, inconsistent with complaints of a disabling level of pain. [*Id*.] Sixth, the ALJ noted that none of the physicians that treated or examined Plaintiff ever opined that Plaintiff qualified as disabled. [*Id*.] Finally, the ALJ found that a review of the objective evidence in Plaintiff's medical record failed to establish that any of Plaintiff's impairments were likely to produce disabling pain or other limitations for any period of twelve or more continuous months. [*Id*.] Based on the medical evidence, the ALJ found that Plaintiff's

allegations of disabling limitations were not credible. [*Id*.] Therefore, the ALJ rejected Plaintiff's allegations of pain, excess pain, and disabling exertional and non-exertional limitations. [*Id*.]

The ALJ determined that Plaintiff retained the residual functional capacity to perform a significant range of sedentary work. [AR at 17.] Specifically, the ALJ concluded that Plaintiff could stand/walk at least two hours in an eight-hour workday, sit six hours in an eight-hour workday, and could lift and carry twenty pounds occasionally and ten pounds frequently. [AR at 18.] Plaintiff's postural limitations restricted him from performing tasks requiring more than occasional bending. [*Id*.] The ALJ found Plaintiff had no past relevant work. [*Id*.] The ALJ concluded that although Plaintiff's exertional limitations do not allow him to perform the full range of sedentary work, there are a significant number of jobs in the national economy that he could perform. [AR at 19.] Therefore, Plaintiff was determined to be ineligible for SSI benefits. [*Id*.]

## DISCUSSION

### 1. LEGAL STANDARD

The Social Security Act authorizes payment of SSI benefits to individuals who have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that the claimant is not only unable to do her previous work, but, considering age, education, and work experience, cannot engage in any kind of substantial gainful work that exists in the national economy. *Id.* § 1382c(a)(3)(B).

The Commissioner makes this assessment using a five-step analysis. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b). Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities. If not, the claimant is not disabled. *Id.* § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. *Id.* § 416.920(d). Fourth, if the impairment meets or equals one of

the listed impairments, the Commissioner determines whether the claimant can do his past relevant work. If the claimant can do his past work, benefits are denied. *Id*. § 416.920(e). If the claimant cannot perform her past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Id*. § 416.920(f). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, then benefits are denied. *Id*. § 416.966.

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (*citing Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Commissioner for further proceedings. *Id*.

    **2.**    ***PLAINTIFF'S CLAIMS***

Plaintiff asserts two grounds for reversal of the ALJ's decision. First, he alleges that the ALJ's

finding that his testimony was not fully credible was not supported by substantial evidence. (*Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment* ("Plaintiff's MSJ"), 9.) Second, he alleges error with respect to the ALJ's consideration of the vocational expert's testimony during the hearing. (*Id*. at 12.) Defendant argues that the ALJ properly evaluated the credibility of Plaintiff's testimony and that substantial evidence in the record supports the ALJ's five step assessment and decision. (*Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment* ("Defendant's MSJ"), 5 & 9.)

    A.  *Credibility of Plaintiff's Testimony Regarding Residual Functional Capacity*

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment, conducted at step four of the five-step disability evaluation process, is legally flawed and not based on substantial evidence. Specifically, Plaintiff contends that the ALJ incorrectly discredited Plaintiff's testimony regarding RFC and therefore erroneously disregarded Plaintiff's subjective complaints of pain when determining that Plaintiff could perform a range of sedentary work. (*Plaintiff's MSJ*, 9-11.) Defendant argues that the ALJ's credibility findings are supported by substantial evidence and should not be disturbed. (*Defendant's MSJ*, 6-10.)

The ALJ examines the claimant's "residual functional capacity and the physical and mental demands" of the claimant's past relevant work, 20 C.F.R. § 404.1520(e), at step four of the sequential process. Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. *See* SSR 82-62. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. Information about symptoms must be given "careful consideration." *Id.*

If the ALJ finds that the claimant's testimony as to the severity of his pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). The ALJ may consider at least the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between testimony and conduct, [claimaint's] daily

activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

In the RFC assessment, the ALJ concluded:

> "[C]laimant retains the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. He can sit in sixty minute intervals, but then must stand for fifteen minutes, with an ability to sit for approximately six hours in an eight-hour workday and stand and/or walk for at least two hours in an eight-hour workday. Additionally, he must avoid even moderate exposure to heat or cold, unprotected heights or tasks requiring more than occasional bending."

[AR at 15.] The ALJ stated that he relied on the medical evidence in the record, as well as the testimony taken at the hearing, to make his assessment. [*Id.*] The ALJ considered Plaintiff's subjective complaints and determined that, in light of the record, they were only partially credible. The ALJ took Plaintiff's testimony into account to the extent that he found Plaintiff's RFC limited him to performing sedentary work, despite being a younger individual. [AR at 15.]

However, after considering Plaintiff's subjective complaints, the ALJ rejected his allegation that he is completely unable to work due to his impairments. In making this determination, the ALJ relied on the testimony of the ME that Plaintiff's back pain had been treated successfully many years before, and that nothing existed in the medical record to suggest that Plaintiff's back pain was residual or caused by any continuing complications related to his back. [AR at 14.] The ALJ took into account the ME's opinion that, assuming Plaintiff suffers from occasional back spasms as he so testified, the spasms could be accommodated in the work place by allowing Plaintiff to take fifteen minute breaks to stand up. [*Id.*] The ME also testified that Plaintiff's complaints of fatigue could be symptomatic of chronic Hepatitis C, but the medical record only indicates that Plaintiff has been diagnosed with Hepatitis C - he has never been found to have any chronic conditions as a result. [AR at 297; 251.] The ME concluded that Plaintiff's impairments, neither individually nor together, met or medically equaled any listed disability. [AR at 14-15.] The ALJ agreed with the ME's assessment.

The ALJ determined that the status of Plaintiff's impairments did not fully support Plaintiff's allegations of pain and disabling limitations. For instance, the ALJ found that it was noted several times in the medical record that Plaintiff's only prescribed medications were Zantac (to treat his gastro-

esophageal reflux disease) and Naprosyn (a non-steroidal anti-inflammatory). [AR at 16.] No evidence in the record demonstrated that Plaintiff had ever been treated for severe and chronic pain; there was no record to indicate that Plaintiff had ever been prescribed codeine or morphine based analgesics, medications that are prescribed in the ordinary course to help control disabling levels of pain. [*Id.*] Also, the ALJ noted that neither the treating physicians nor the State Agency physician determined Plaintiff to be disabled by his alleged pain and fatigue. [*Id.*]

The ALJ is not required to believe a claimant's complaints of pain, and can disregard unsupported, self-serving testimony whenever the claimant fails to submit objective medical findings establishing a medical impairment that could reasonably be expected to produce the claimed pain. *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985). However, the ALJ must make specific findings justifying that decision. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985); *Bellamy v. Secretary of Health and Human Services*, 755 F.2d 1380, 1382 (9th Cir. 1985). Here, the relative absence of medical problems or records of any medical treatment specific to Plaintiff's alleged disabling pain; Dr. Chavira's records indicating that Plaintiff's endocarditis was cured within six months; and Dr. Lee's records that Plaintiff suffered no long term heart damage from the endocarditis, does not suffer from any type of heart disease or failure, and suffers no chronic conditions resulting from Hepatitis C, support the ALJ's conclusion that Plaintiff's testimony was not credible with regard to his limitations and pain. This Court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by "specific findings justifying that decision." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991) (en banc) (reaffirming the *Cotton* standard). In the instant case, the Appeals Council accepted the ALJ's finding that Plaintiff's pain testimony was not fully credible. [AR at 3.] The ALJ thoroughly discussed the medical evidence in making his credibility finding. The physicians' reports consistently failed to find a medically documented connection between Plaintiff's actual impairments and his alleged degree of pain. Therefore, the ALJ's assessment is entitled to great deference and the Court finds no error.

    B.  *The ALJ's Consideration of the Vocational Expert's Testimony*

Plaintiff also argues that the ALJ erred in his decision by failing to take into consideration the vocational expert's ("VE") testimony elicited on cross-examination by Plaintiff's attorney. Specifically,

1  Plaintiff argues that the ALJ did not assess or comment upon the impact that taking ten or fifteen minute
2  unscheduled work breaks due to muscle spasms would have on Plaintiff's ability to work despite
3  testimony from the VE that such breaks might be necessary. (*Plaintiff's MSJ*, 12-14.) Defendant argues
4  that the ALJ's findings were supported by substantial evidence, and accordingly there was no error.
5  (*Defendant's MSJ*, 9-10.)

6  Subsequent to the ALJ's examination of the VE, Plaintiff's attorney conducted a brief cross
7  examination in which he questioned the VE regarding Plaintiff's ability to sustain 40 hours of work
8  activity. [AR at 299-300.] After questioning the VE regarding the impact of a once a day scheduled
9  work break due to back spasm lasting fifteen minutes, which the VE testified would not affect
10 sustainability, Plaintiff's attorney queried:

> Q: Well, if I changed that to say an unscheduled work break beyond the customary breaks, an extra 15 minutes a day, would that make a difference?
> A: Well, yeah. If we go outside of the customary work breaks, then you're getting into the performance of an eight-hour day.

14 [AR at 300.] Plaintiff now argues that the ALJ did not take this testimony into account when rendering
15 his decision to deny benefits, and therefore his decision is not based on substantial evidence. (*Plaintiff's*
16 *MSJ*, 14.)

17 In order for the testimony of a VE to be considered reliable, the hypothetical posed must include
18 "all of the claimant's functional limitations, both physical and mental" supported by the record. *Flores*
19 *v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995); *see Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th
20 Cir. 1997). Here, the hypothetical contained all of the necessary information. [AR at 298.] In fact,
21 Plaintiff does not dispute the accuracy of the hypothetical question posed by the ALJ to the VE; rather,
22 Plaintiff claims that the ALJ ignored the VE's cross-examination testimony given subsequent to her
23 response to the hypothetical. However, the ALJ is not bound to accept as true the restrictions presented
24 in a hypothetical question propounded by a claimant's counsel. *Martinez v. Heckler*, 807 F.2d 771, 773.
25 The hypothetical suggested at the hearing by Plaintiff's counsel added considerations more restrictive
26 than those suggested by the ALJ. Based on his evaluation of the evidence, the ALJ was free to accept or
27 reject those restrictions. Administrative hearings are uniquely suited for such factual determinations,
28 and it is not the province of this Court to overturn them as long as they are supported by substantial

evidence. *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir. 1985); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Despite Plaintiff's claims, the medical record lacks objective evidence to support the existence of excessive, disabling pain. The ALJ properly weighed the evidence in this case to conclude that Plaintiff is not disabled and is not entitled to payment of SSI benefits.

## CONCLUSION

Based on a review of the record and consideration of the briefs submitted, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**.

This Report and Recommendation is submitted by the undersigned Magistrate Judge to the District Judge assigned to this case, pursuant to the provision of Title 28, United States Code, section 636(b)(1).

Any party may file written objections with the Court and serve a copy on all parties on or before *July 13, 2007*. The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections shall be filed and served **no later than 10 days after being served with the Objections**.

**IT IS SO ORDERED**.

DATED: June 27, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge